**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| MICHAEL KENT, Individually and On Behalf of All Others Similarly Situated, ) ) ) | |
| Plaintiff, ) | Case No. _____ |
| ) | |
| v. ) | CLASS ACTION |
| ) | |
| RED HAT, INC., JAMES M. WHITEHURST, ) NARENDRA K. GUPTA, SOHAIB ABBASI, ) STEVE ALBRECHT, CHARLENE BEGLEY, ) KIM HAMMONDS, WILLIAM S. KAISER, ) KEVIN M. MURAI, and ALFRED W. ) ZOLLAR, ) ) | JURY TRIAL DEMANDED |
| Defendants. ) | |

<u>**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**</u>

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

<u>**NATURE OF THE ACTION**</u>

1.      This action stems from a proposed transaction announced on October 28, 2018 (the "Proposed Transaction"), pursuant to which Red Hat, Inc. ("Red Hat" or the "Company") will be acquired by International Business Machines Corporation ("Parent") and Socrates Acquisition Corp. ("Merger Sub," and together with Parent, "IBM").

2.      On October 28, 2018, Red Hat's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with IBM.  Pursuant to the terms of the Merger Agreement, Red Hat's stockholders will receive $190.00 in cash for each share of Red Hat common stock they hold.

3.      On December 12, 2018, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission (the "SEC") in connection with the Proposed Transaction.

4.      The Proxy Statement, which scheduled a stockholder vote on the Proposed Transaction for January 16, 2019, omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.  Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6.      This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8.      Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Red Hat common stock.

9.      Defendant Red Hat is a Delaware corporation and maintains its principal executive offices at 100 East Davie Street, Raleigh, North Carolina 27601.  Red Hat's common stock is

traded on the New York Stock Exchange under the ticker symbol "RHT." Red Hat is a party to the Merger Agreement.

10.     Defendant James M. Whitehurst is President, Chief Executive Officer, and a director of the Company.

11.     Defendant Narendra K. Gupta is Chairman of the Board of the Company.

12.     Defendant Sohaib Abbasi is a director of the Company.

13.     Defendant Steve Albrecht is a director of the Company.

14.     Defendant Charlene Begley is a director of the Company.

15.     Defendant Kim Hammonds is a director of the Company.

16.     Defendant William S. Kaiser is a director of the Company.

17.     Defendant Kevin M. Murai is a director of the Company.

18.     Defendant Alfred W. Zollar is a director of the Company.

19.     The defendants identified in paragraphs 10 through 18 are collectively referred to herein as the "Individual Defendants."

## CLASS ACTION ALLEGATIONS

20.     Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Red Hat (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

21.     This action is properly maintainable as a class action.

22.     The Class is so numerous that joinder of all members is impracticable. As of October 18, 2018, there were approximately 176,542,812 shares of Red Hat common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

23.     Questions of law and fact are common to the Class, including, among others, whether defendants violated the 1934 Act and whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

24.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

25.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

26.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.  Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

### *Background of the Company and the Proposed Transaction*

27.     Red Hat is the world's leading provider of enterprise open source software solutions, using a community-powered approach to deliver reliable and high-performing Linux, hybrid cloud, container, and Kubernetes technologies.

28.     Red Hat helps customers integrate new and existing IT applications, develop cloud-native applications, standardize on the Company's industry-leading operating system, and

automate, secure, and manage complex environments.

29.　　On October 28, 2018, Red Hat's Board caused the Company to enter into the

Merger Agreement with IBM.

30.　　Pursuant to the terms of the Merger Agreement, Red Hat's stockholders will receive

$190.00 in cash for each share of Red Hat common stock they hold.

31.　　According to the press release announcing the Proposed Transaction:

IBM (NYSE:IBM) and Red Hat (NYSE:RHT), the world's leading provider of open source cloud software, announced today that the companies have reached a definitive agreement under which IBM will acquire all of the issued and outstanding common shares of Red Hat for $190.00 per share in cash, representing a total enterprise value of approximately $34 billion. . . .

This acquisition brings together the best-in-class hybrid cloud providers and will enable companies to securely move all business applications to the cloud. Companies today are already using multiple clouds. However, research shows that 80 percent of business workloads have yet to move to the cloud, held back by the proprietary nature of today's cloud market. This prevents portability of data and applications across multiple clouds, data security in a multi-cloud environment and consistent cloud management.

IBM and Red Hat will be strongly positioned to address this issue and accelerate hybrid multi-cloud adoption. Together, they will help clients create cloud-native business applications faster, drive greater portability and security of data and applications across multiple public and private clouds, all with consistent cloud management. In doing so, they will draw on their shared leadership in key technologies, such as Linux, containers, Kubernetes, multi-cloud management, and cloud management and automation.

IBM's and Red Hat's partnership has spanned 20 years, with IBM serving as an early supporter of Linux, collaborating with Red Hat to help develop and grow enterprise-grade Linux and more recently to bring enterprise Kubernetes and hybrid cloud solutions to customers. These innovations have become core technologies within IBM's $19 billion hybrid cloud business. Between them, IBM and Red Hat have contributed more to the open source community than any other organization. . . .

With this acquisition, IBM will remain committed to Red Hat's open governance, open source contributions, participation in the open source community and development model, and fostering its widespread developer ecosystem. In addition, IBM and Red Hat will remain committed to the continued freedom of open source,

via such efforts as Patent Promise, GPL Cooperation Commitment, the Open Invention Network and the LOT Network.

IBM and Red Hat also will continue to build and enhance Red Hat partnerships, including those with major cloud providers, such as Amazon Web Services, Microsoft Azure, Google Cloud, Alibaba and more, in addition to the IBM Cloud. At the same time, Red Hat will benefit from IBM's hybrid cloud and enterprise IT scale in helping expand their open source technology portfolio to businesses globally. . . .

Upon closing of the acquisition, Red Hat will join IBM's Hybrid Cloud team as a distinct unit, preserving the independence and neutrality of Red Hat's open source development heritage and commitment, current product portfolio and go-to-market strategy, and unique development culture. Red Hat will continue to be led by Jim Whitehurst and Red Hat's current management team. Jim Whitehurst also will join IBM's senior management team and report to Ginni Rometty. IBM intends to maintain Red Hat's headquarters, facilities, brands and practices. . . .

Financial Details

The acquisition of Red Hat reinforces IBM's high-value model. It will accelerate IBM's revenue growth, gross margin and free cash flow within 12 months of closing. It also will support a solid and growing dividend.

The company will continue with a disciplined financial policy and is committed to maintaining strong investment grade credit ratings. The company will target a leverage profile consistent with a mid to high single A credit rating. The company intends to suspend its share repurchase program in 2020 and 2021.

At signing, the company has ample cash, credit and bridge lines to secure the transaction financing. The company intends to close the transaction through a combination of cash and debt.

The acquisition has been approved by the boards of directors of both IBM and Red Hat. It is subject to Red Hat shareholder approval. It also is subject to regulatory approvals and other customary closing conditions. It is expected to close in the latter half of 2019.

***The Proxy Statement Omits Material Information, Rendering It False and Misleading***

32.     Defendants filed the Proxy Statement with the SEC in connection with the Proposed

Transaction, which scheduled a stockholder vote on the Proposed Transaction for January 16,

2019.

33.     As set forth below, the Proxy Statement omits material information with respect to the Proposed Transaction.

34.     First, the Proxy Statement omits material information regarding the Company's financial projections and the analyses performed by the Company's financial advisors in connection with the Proposed Transaction, Guggenheim Securities, LLC ("Guggenheim") and Morgan Stanley & Co. LLC ("Morgan Stanley").

35.     With respect to the Company's financial projections, the Proxy Statement fails to disclose, for all sets of projections: (i) all line items used to calculate unlevered free cash flow; (ii) all line items used to calculate EBITDA; and (iii) a reconciliation of all non-GAAP to GAAP metrics.

36.     With respect to Guggenheim's Red Hat Discounted Cash Flow (DCF) Analyses, the Proxy Statement fails to disclose: (i) all line items used to calculate unlevered free cash flow; (ii) Red Hat's terminal values; and (iii) the individual inputs and assumptions underlying the discount rate range of 9.25% to 11.00% and the perpetual growth rates of 1.50% to 2.50%.

37.     With respect to Guggenheim's Premia/(Discounts) Paid in Selected Precedent Merger and Acquisition Transactions, the Proxy Statement fails to disclose the premiums paid in the transactions observed by Guggenheim in the analysis.

38.     With respect to Guggenheim's Red Hat Selected Publicly-Traded Companies Analysis, the Proxy Statement fails to disclose the Company's projected levered free cash flow.

39.     With respect to Morgan Stanley's Public Trading Comparables Analysis, the Proxy Statement fails to disclose the "street case" projected revenue and unlevered free cash flow for the Company.

40.     With respect to Morgan Stanley's Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) all line items used to calculate unlevered free cash flow; (ii) the range of terminal values for the Company; (iii) the individual inputs and assumptions underlying the discount rates ranging from 9.5% to 10.5% and the perpetuity growth rates ranging from 2.0% to 3.0%; (iv) the Company's net operating losses and other tax shield benefits; and (v) the number of shares of Red Hat common stock outstanding and the dilutive securities provided to Morgan Stanley by Red Hat management.

41.     With respect to Morgan Stanley's Precedent Transactions Analysis, the Proxy Statement fails to disclose the individual multiples and financial metrics for the transactions observed by Morgan Stanley in the analysis.

42.     With respect to Morgan Stanley's Premiums Paid Analysis, the Proxy Statement fails to disclose the premiums paid in the transactions observed by Morgan Stanley in the analysis.

43.     The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.  Moreover, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

44.     Second, the Proxy Statement omits material information regarding potential conflicts of interest of Guggenheim and Morgan Stanley.

45.     The Proxy Statement fails to disclose the amount of compensation Guggenheim received for the past services it provided to the Company.

46.     Similarly, the Proxy Statement fails to disclose the amount of compensation Guggenheim received for the past services it provided to IBM.

47.     The Proxy Statement further fails to disclose the current estimated "expected payment to be made by Red Hat to Morgan Stanley" in connection with the unwinding of warrants in connection with the consummation of the Proposed Transaction.

48.     Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

49.     Third, the Proxy Statement fails to disclose whether the Company entered into any confidentiality agreements that contained standstill and/or "don't ask, don't waive" provisions that are or were preventing the counterparties from submitting superior offers to acquire the Company, including, but not limited to, the confidentiality agreements executed by Party B and Party C.

50.     Without this information, stockholders may have the mistaken belief that, if these potentially interested parties wished to come forward with a superior offer, they are or were permitted to do so, when in fact they are or were contractually prohibited from doing so.

51.     The omission of the above-referenced material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) Background of the Merger; (ii) Recommendation of Our Board of Directors and Reasons for the Merger; (iii) Opinions of Red Hat's Financial Advisors; and (iv) Financial Forecast.

52.     The omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated
Thereunder Against the Individual Defendants and Red Hat**

53.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

54.     The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading.  Red Hat is liable as the issuer of these statements.

55.     The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

56.     The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

57.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.   In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

58.     The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

59.     By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

60.     Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants

61.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

62.     The Individual Defendants acted as controlling persons of Red Hat within the meaning of Section 20(a) of the 1934 Act as alleged herein.  By virtue of their positions as officers and/or directors of Red Hat and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

63.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

64.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in the making of the Proxy Statement.

65.     By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

66.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.  As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A.     Enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.     Directing the Individual Defendants to file a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.     Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.     Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.     Granting such other and further relief as this Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated:  December 19, 2018                    **RIGRODSKY & LONG, P.A.**

                                        By:  */s/ Gina M. Serra*
                                             _____
                                             Brian D. Long (#4347)
**OF COUNSEL:**                              Gina M. Serra (#5387)
                                             300 Delaware Avenue, Suite 1220
**RM LAW, P.C.**                             Wilmington, DE 19801
Richard A. Maniskas                          Telephone: (302) 295-5310
1055 Westlakes Drive, Suite 300              Facsimile: (302) 654-7530
Berwyn, PA 19312                             Email: bdl@rl-legal.com
Telephone: (484) 324-6800                    Email: gms@rl-legal.com
Facsimile: (484) 631-1305
Email: rm@maniskas.com                       *Attorneys for Plaintiff*